We'll resume now with number 20-6029, Smith v. Allbaugh. Uh, Mr. Pedersen, are you ready to proceed? Yes, your honor. Go ahead. May it please the court. I'm Devin Peterson representing appellants, Joe Allbaugh and Carl Baer. During the time period relevant to this case, Mr. Allbaugh was the director of the Oklahoma Department of Corrections. Mr. Baer was the warden of the Joseph Harp Correctional Center. Uh, director Allbaugh and warden Baer are appealing the denial of their motion to dismiss based on qualified immunity. Uh, the various issues in this case can be broken down into, uh, the, the following four, uh, dispositive issues. Uh, the first three of which have to do with whether certain legal propositions have been clearly established in this circuit. The first issue is whether it is clearly established in this circuit that the eighth amendment, uh, requires prison officials to promulgate policies for specific medical decisions based on certain symptoms that may be presented to medical, uh, licensed medical professionals or whether, or, uh, or whether it's the case that prison officials may delegate those decisions to the licensed medical professionals, rather than promulgating specific policies, uh, in that regard. The second clearly established question is whether it is clearly established under the eighth amendment that prison officials must promulgate policies and procedures outlining the specific circumstances in which a patient's medical condition renders them, renders them unable to voluntarily waive treatment, uh, or whether prison officials can simply rely on the medical licensed medical professionals that they've hired to make those determinations. Um, the third question has, has to do with employing, uh, physicians. It's whether it's clearly established in this circuit under the eighth amendment that prison officials may not employ licensed medical professionals who've had past discipline, um, eight to 18 years ago in this case, um, for, uh, addiction issues, um, whether, whether that, whether the, whether the eighth amendment forbids the employment of such medical professionals. Um, we would suggest that there are no United States or 10th circuit cases, uh, clearly establishing those issues. Uh, first, uh, back to the first issue, which has to do with whether, uh, uh, prison officials have to promulgate, uh, certain policies and procedures regarding the symptoms presented to medical professionals. Uh, the plaintiffs have alleged at paragraph 67 of their complaint that upon information and belief, the senior defendants, those are my clients, the appellants, Albaugh and, uh, Baer, senior defendants failed to promulgate, implement or enforce policies or procedures requiring medical staff, including defendants, Hayes and Miles. Those are medical professionals. They're not, uh, before the court today to immediately inform a physician or refer an inmate to a hospital when an inmate presents complaints about difficulty breathing or acute stomach pain, or showed obvious signs of medical distress, like a racing heart or other symptoms that are commonly associated with acute appendicitis, or that would require a physician, including defendant bail law to conduct an in-person examination of a critically ill patient or arrange for their immediate transfer to a facility. It's our position that it's not clearly established that the director of the department of corrections or the warden of a certain prison is required to have a policy that lays out all those things. Um, what was the policy? The, the, the policy is not alleged in the complaint. We're here on a motion to dismiss. I know, but I don't want you to tell me what the policy is. What the actual policy is. I believe they do actually have policies that, um, deal with certain medical conditions like, uh, chest pain or something like that. And those are, uh, policies promulgated by the medical director, uh, not by a person in the position of my clients, who's the director of the department of and the warden of the prison. Uh, they don't have specific, um, algorithmic decision trees for each kind of symptoms. Um, they, they don't have one for appendicitis or for cancer, or they just don't have that level of detail. I, I, I do believe I, if I recall correctly, if they still have it, they, they do have one on chest pain. Um, but, but I'm not, uh, that, that wasn't alleged in the complaint. Um, the, the, the allegation in the complaint was simply that my clients, the senior officials failed to either fail to promulgate such a regulation regarding acute appendicitis, or they failed to, uh, enforce a policy if they did have a policy. Um, Okay. Let me ask you another question. Yes, sir. Uh, how many, how many prisoners are there in the Joseph, uh, uh, correctional facility? I do not have that information at my fingertips. Um, I, I don't believe that that was pled. I, I would be almost guessing if I told you, I think it's a thousand. It's 1,372. 13. Oh, thank you, Your Honor. Um, again, and back to, this is a question of supervisory authority, isn't it? Isn't that the issue here? It's a supervisor reliability claim. Certainly there, there, I don't think there's any allegation that my defendants actually participated hands-on or made any kind of medical decisions or even knew that this was occurring. Uh, it is strictly, you're correct. It is strictly a supervisory liability case. And, and specifically it's a supervisory, supervisory liability case alleging unconstitutional hiring. And, uh, these two policies that allegedly should have been implemented or, uh, in, or enforced, uh, as pled in the alternative by the plaintiff-appellees. Um, the plaintiff has, neither the plaintiff-appellees nor the district court cited any cases showing that would put, uh, defendants who were in the position of my clients on, on notice that it was beyond debate that they would be violating the eighth amendment if they did not put these specific policies in place. Uh, the plaintiff does not allege anywhere in the complaint that these policies caused any specific medical indifference problems or cause any specific constitutional violations, I believe they make a conclusory allegation that the conditions that Joseph Harp were bad, um, and they created an atmosphere of indifference, but there are no specific factual allegations that strictly a conclusory allegation, which under the 12 week Iqbal standard is, is not sufficient to state a claim and not sufficient to, uh, as the court puts it, unlock the doors to As for the, and I'll, I'll, let me, let me briefly run through the, the, the relevant cases that have been relied upon by the plaintiffs and, or the district court to allegedly clearly established these rights to have these policies implemented or to, uh, not hire physicians with a past licensing discipline. Um, Burt B. Regalado, that's a medical care case. Uh, we would offer to the court that that case is distinguishable because that case relied on, uh, specific instances, uh, where investigators had identified recurring issues with the jail's medical care over a period of years. Um, there are simply no such allegations here of any specific medical problems other than the conclusory allegations that I mentioned a moment ago. Um, the next case is Keith versus Koner. That's a 10th circuit case. It is a, uh, a sexual assault case. And that case is distinguishable from this one in that in, in Keith, the court said that Ms. Keith's complaints refer to facts primarily from the audit report that could support a conclusion that Ms. Koner was aware of multiple incidents of unlawful sexual conduct. Uh, and it goes on to outline, uh, all these prior incidents of sexual misconduct that had occurred prior to the sexual misconduct, uh, with reference to the plaintiff in that case. So again, this case is distinguishable from that. Um, the next case, Lopez versus Lamaster. That was, uh, a case alleging both failure to, uh, protect from attack and, uh, denial of medical care. That case is distinguishable from ours. It does not clearly establish the rights plaintiff alleges because, um, in that that the sheriff knew about here, there's no allegation that there was a, any specific, uh, prior problem caused by, uh, my client's policies or, uh, or failure to implement policies, uh, on the medical aspect of the Lopez case. Uh, that's distinguishable because the sheriff himself directed the jailer by telephone, not to take the plaintiff to the hospital because he was still conscious. There's no specific allegation in our case that, uh, my clients did anything, uh, hands-on or made any directions or even knew about this incident. Um, the other case relied upon is Poore versus Glanz. Um, in that case, it's distinguishable because Sheriff Glanz in that case, the supervisor admitted that he was aware of a prior incident where a male nurse had been watching a juvenile female inmate in the shower of the medical unit. And he conceded that better monitoring could, could discourage future incidents. Um, he was on notice of those, of that problem, but he had not made any changes to the manner in which, uh, juvenile female inmates were supervised. Uh, that case doesn't clearly establish what the plaintiffs are attempting to, uh, allege is clearly established a lot in our case. Um, and again, I'll just reiterate that the Supreme Court has repeatedly said that defining a right at a high level of generality is insufficient to, uh, put a defendant on notice, except in an obvious case is insufficient to put a defendant on notice that, uh, what they're doing, um, violates the right. The contours of the right have to be specifically identified in the case. In fact, uh, the 10th circuit has held that in a supervisory liability case, that a plaintiff must identify a case where an official acting under similar circumstances as the defendants was held to a vitality of the constitution. In this case, there are no such cases. Did you plan to reserve any time for rebuttal? Uh, yes, I'm sorry. I will reserve the remainder of my time unless there are questions. Thank you. Ms. Rosenfeld. Thank you. Uh, good afternoon. May it please the court, Katie Rosenfeld on behalf of plaintiff appellee, Christina Smith. Uh, Judge Kelly is correct. This appeal concerns a supervisory liability issue. Um, and in this case, the district court judge Goodwin issued a very thorough 22 page decision denying defendants motion to dismiss in its entirety. Well, why don't you tell us exactly what it is that these individuals, one, the warden of a 1,372 member prison should have been doing and what the director of corrections over the entire state did or should have done, uh, to subject them to liability as opposed to the people down on the ground? Yes, absolutely. Judge Kelly, the, what the complaint alleges are a number of specific failures by these two defendants. One, the complaint alleges that defendant Albaugh and defendant Baer were responsible for onsite medical care and that in that capacity, they had a policy within the department and this prison of hiring incompetent, unprofessional and ill qualified providers, two of whom provided care to our, to Mr. Joshua England, who died. Is that because of their earlier drug problems, their suspensions, their discipline, two of the four providers at issue, your honor, what was the causation in that particular instance? The causation of how these supervisors caused these individuals to be hired, your honor. No, well, one does the, does the warden of a 1,372 population even hire anybody individually? And two, uh, was there anything that these individuals who were hired did that couldn't be, um, remedied by a suit against them and against the, uh, as opposed to individually against the warden and the secretary of corrections or the director of corrections. So in our complaint, we specifically allege that these defendants did have responsibility for hiring onsite medical personnel for managing and for supervising them. And was that, was that admitted? Well, your honor, the motion to dismiss was filed and that is an important element of this case. We are at the motion to dismiss stage and judge Goodwin found that we had multiple specific allegations against these two defendants. We identified five specific policies that they were responsible for either implementing or failure to implement. We identified a pattern within the Oklahoma department of corrections of hiring ill qualified and grossly incompetent medical staff as of 2012. Apparently one third of the doctors employed by the department of discipline. And so for several pages in our complaint, with the allegations of which obviously must be taken, um, while pleaded in plaintiff's favor at this stage, judge Goodwin found that we had specifically alleged what these two defendants did at this facility, given the nature of hiring incompetent doctors, given... Let me ask about those specifics. You've got to establish deliberate indifference by the two defendants. Do you not? Correct. And the, the two doctors that are involved here had been disciplined, but they were fully licensed when they were hired. That is true, your honor. And, and the allegation that they've been at the prison between the time they were hired and the time of the incident. Wasn't it a matter of years? We don't know, your honor, because as, as I mentioned, we're at the motion to dismiss stage. What we do know here is that a 21 year old young man died because of the... That's, that's, that's not the issue here. Not yet. Not yet. You've got to prove you've got a alleged fact showing deliberate indifference. And what is there to show that the warden, the secretary of corrections, on notice that these doctors were not capable or were not performing adequately other than a decades old, in one case, more than decades old disciplinary, is there anything to show that the warden or the secretary of corrections is aware of prior malpractice or inadequate treatment by either of the doctors? Your honor, there is nothing to show that yet. And that is why it's very important to note again, that we are at the motion to  the one that judge Goodwin cited in his opinion, such as Burke versus Regalado, such as Dods, such as Brown. These cases involving summary judgment You have to plead facts, Counsel. Can't just make a general allegation. And, Your Honor, we have plead facts at paragraphs 90 to 101 of our complaint, which do specifically set out that these defendants were responsible for improperly hiring, supervising and retaining the defendants on staff, that they were aware that there was a number of medical providers in the state system and at Joseph Harp who were not qualified, that they were aware that there was a culture of that the Oklahoma Department of Corrections was a sinking ship where inmates could not I think under Iqbal Twombly, those are well and good, those allegations, but those are conclusory. You need to you need to give some specifics of how they knew that. But and there's nothing here. That's my concern. Maybe it's a concern, but if you look at our complaint and this is specifically what Judge Goodwin held, we do allege specifically that Defendant Albaugh was aware of serious problems jeopardizing the health and safety of those inside Joseph Harp. And it quotes to specific statements in the public record that Defendant Albaugh had made about the inability of the Department of Corrections to provide for the prison population in a safe and humane way and predicting that that failure was going to lead to lawsuits against the department. Now, that at the pleading stage certainly goes to Defendant Albaugh's knowledge. That's interesting that you say it points to statements he had made publicly. It cites to a public statement that Defendant Albaugh made. This is paragraph 100 of our complaint where he says if the state doesn't demonstrate that they can handle their prison population in a safe and humane way, what are inmates supposed to do? They're going to sue. And your honor, that's hardly an admission that. Where does it say that he was aware that it actually happened? Is that later? No, I can't see you anymore. You're going down. Thank you. That's a separate allegation, your honor. But we do allege that they were aware that they were providing grossly deficient medical care. And your honor, there are cases. What is the what is the factual allegation that supports that? I thought you're going to give it to me. I thought you had a statement by him saying we've been really screwing up. We're not providing care. But that's not what the quote was. Well, your honor, the quote suggests that in the article, which is titled Weighing the Case, that there is a problem with the provision of safe and humane care. And your honor, respectfully, if we look at the cases where qualified immunity is denied at a summary judgment stage, yes, we need to make out these basic allegations. But when you look at some of the decisions of this court that have granted QI at the motion to dismiss stage qualified immunity, for example, this court's decision in Brown versus Montoya 2011 decision, there is a one paragraph conclusory allegation that moves the court to find, as your honor is pointing out, that the allegations cannot be conclusory. Here, we've identified two specific medical providers and an allegation about the overall problem with the quality of doctors that are responsible to these defendants for their jobs. We've identified five specific policies that we allege plausibly are within the purview of these defendants to operate and to supervise. And then about the policies, specific allegations of of knowledge by the warden and the secretary that. The care had been faulty in these regards, and the policy therefore needed to be established to prevent further. Further harm. We do allege, your honor, that they were aware of grossly deficient medical care being provided to inmates at Joseph Harp and took no steps to correct it. And your honor, what I would say is, is there the question that these that the decisions of this court look at is, is there fair notice? Do these allegations go beyond formulaic labels and conclusions? These are not formulaic allegations, because what we are saying here is that with respect to the provision of basic health care for an emergency condition at Joseph Harp, appendicitis, these defendants oversaw a system that could not provide that were at issue here and that were within their responsibility. We plead these are part of their job to ensure that inmates are receiving very basic medical care and that they failed to allege and they failed to carry out. And there was a policy there and you've already pledged that there was a failure to enforce a policy requiring the nurses, et cetera, to immediately inform the facility medical provider and that they failed to inform and enforce a policy requiring them to immediately contact emergency surgeons. I got it on do not disturb too. Just glad it wasn't my phone. So there were policies and you say that they were not enforced. Is that correct? There's two policies as Judge Goodwin found in his decision. There are there are policies that were not enforced and there were policies that were not in place. And these are not policies specific to any particular condition. Your Honor, these are the very basic policies regarding when does somebody have to go to the hospital? When does somebody require an in-person examination? When does somebody in a medical crisis need to get treatment? So we're not saying that in every tiny, small medical condition, there needs to be a but there is a policy, a general policy in place. And whether it was enforced or not is what your suit is is about. Right. Well, Your Honor, we do allege that two policies were not in place at all and that the other policies were in place, but were not were not enforced. So why don't you sue the governor? I mean, why didn't you just sue the whole state government? Well, they know just as much as as the secretary of corrections. You know, Your Honor, with all due respect, there definitely are cases where an individual at this at this level of government is not the proper defendant. And for example, there are cases where, you know, the secretary of New Mexico Corrections is found not to be the proper person in a case about an individual incident. But in this case, at the motion to dismiss stage where we have laid out the people involved, the policies involved. You haven't laid out anything about what the individual did specifically with respect to what you're saying should have been done. Well, I found nothing there. We have laid out the basis for our belief that these defendants were responsible. And that specifically is that this was their job to oversee the medical care at this system. And that the events that unfolded here combined with the allegations about a general failure to have qualified staff on duty and with the allegations about the nature, the conditions of the prison system, that these are adequate at this stage. Your Honor, we have vigorously pursued additional information in this case. But at the pleading stage, Judge Shugman found that it was plausible and nudged us over the line from conceivable to plausible that these defendants failed to properly. Don't you need some specifics? Can you just go out and file and say, well, I really thought it through and they must not have done it because this guy had all these problems. Well, he did have problems. It was a terrible thing. Well, Your Honor, I would say that at the motion to dismiss stage in the analysis that Judge Goodwin put out, we have that we have not put forward one paragraph as some of the cases that this court has found insufficient. We have put forth. Ethically, I don't think a lawyer can file a complaint alleging a general problem without doing some specific investigation before filing it vis-a-vis the individuals that you've sued. And we have done that, Your Honor, because. Well, you didn't plead it. You didn't plead it if you did it. Well, when we talk about Defendant Albaugh's role in this, Your Honor, we do specifically allege that he was aware of the serious problems jeopardizing people's health and safety. And we quote to his publicly available statements on that issue. Based on that statement does have nothing to do with what he did vis-a-vis this this case. He's trying to remedy the problem and you sue him for it. Well, as as the court is aware, the specific personal involvement is related to whether these officer or these supervisors implemented the policies properly, not whether they were involved in a specific case. Thank you very much. Thank you, counsel. Mr. Peterson, I think you have a minute and a half or so. Well, there he is. I didn't know where you went. I'm sorry, Your Honor. Unless there are questions, I don't have anything further. Thank you. That's fine. Thank you, counsel. The case is submitted. Counselor excused.